of fraud against plaintiff's intestate.   We are unable, however, to see how this was necessary, or how the failure so to do has affected any rights under the execution.   The only object in inserting such allegations in the original action would have been to lay the foundation for certain increased rights under said judgment against the surety personally.   No manner is indicated to us in which a judgment procured after such additional allegations would have given any greater rights of enforcement against the real estate. The judgment obtained in any event would have been an ordinary money judgment, to be enforced against property by execution. The considerations urged in behalf of the plaintiff relate to the enforcement of the judgment, rather than to its form or nature. Plaintiff, in procuring it, was not bound to anticipate or avoid the claim of exemption by alleging King's conduct.   It is sufficient for it to do this and meet the claim when it is urged as a basis of defeating collection of the judgment.

The general principles applicable to a suit in equity are very familiar.   It is a well-understood principle that a plaintiff who seeks the aid of a court of equity must not base his prayer upon conduct or claims which are inequitable and unjust towards others.   This suit is clearly in violation of that principle, and for that and other reasons stated must fail.

Judgment reversed, and new trial granted, with costs to appellant to abide event upon the law and the facts.    All concur.

---

HALSTEAD et al. v. ATTERBURY et al.

(Supreme Court, Appellate Division, First Department.   June 23, 1905.)

1. ADJOINING LANDOWNERS — CONTRACT — BUILDING RESTRICTION—CONSTRUCTION.

  Where the owners of adjoining lots abutting on a street, and between two avenues which intersected the street, agreed that buildings thereafter to be erected on such lots should be set back a certain distance, but that the agreement should not apply to the lots on the corners of the street and any intersecting avenue, nor to lots fronting on the avenues between that street and the one. north of it, and subsequently an avenue was extended northerly so as to intersect the street between the two avenues, a lot fronting on such avenue north of the street in question was not subject to the restriction.

2. SAME—CONVEYANCES—RESTRICTIONS.

  One of the owners having, before the northerly extension of the avenue, conveyed by a deed containing the same restrictions as imposed by the contract, the restriction was not operative, as it should be construed as merely a reiteration of the original restriction, and as the grantor conveyed to the grantee therein all his remaining lots.

Appeal from Special Term, New York County.

Action by John J. Halstead, as trustee, and others, against Charles L. Atterbury and others.   From a judgment for plaintiffs, defendants appeal.   Affirmed on the opinion of the referee.

Following is the referee's opinion:

This is an action for the specific performance of a contract for the conveyance by the plaintiffs to the defendants of property upon the northwest corner

of Lexington avenue and East Seventieth street, in this city, having a frontage of 30 feet 5 inches on Lexington avenue, and a depth of 80 feet. Upon these premises there is erected a dwelling house four stories in height, which stands substantially upon the building line of Lexington avenue, and the southerly wall of which stands substantially 10 feet north of the northerly building line of East Seventieth street. The defendants object to the title on the ground that the premises are subject to certain restrictions imposed upon them by deeds of former owners. These restrictions were imposed as follows:

First. On the 1st day of March, 1859, Israel D. Walter and George W. Hinchman were the owners of certain lots on the northerly side of Seventieth street, between the Third and Fourth avenues, which formerly were part of the common lands of the city of New York. Walter owned thirteen lots, numbered consecutively from 10 to 22 on the common-lands map, commencing 350 feet east of Third avenue, and running westerly 325 feet. Hinchman owned four adjoining lots on the west, and Walter again owned one lot on the north side of Seventieth street, 100 feet east of Fourth avenue, and another lot facing on Fourth avenue and Seventieth street, having a dimension of 25 feet on Fourth avenue and 100 feet on Seventieth street. Neither Hinchman nor Walter owned any other property upon the north side of Seventieth street, between Third and Fourth avenues, on the said 1st day of March, 1859. On that day they executed an agreement which is before me as plaintiffs' Exhibit 2. This agreement recited that the parties were the owners, respectively, of certain lots on the northerly side of Seventieth street between Third and Fourth avenues, and "do mutually agree that the buildings hereafter to be erected on their lots on the said northerly side of 70th Street shall be set back 10 feet from the northerly side of that street, so as to leave a courtyard of that depth unobstructed"; that all conveyances or mortgages, leases, or other instruments made by either of the parties should contain a reference to the agreement and the subject thereof; and then follows the following exception: "But this agreement is not to apply to the lots on the corners of 70th Street and any intersecting avenue nor to lots fronting on the avenues between 70th and 71st Streets, nor to the lot on 70th Street distant 100 feet east of Fourth Avenue." Now at the time this agreement was made there was no avenue between Third and Fourth avenues. Lexington avenue at that time had not been extended north of Sixty-Sixth street, which was its legal termination upon the city maps. In 1868, however, the common council of the city of New York authorized the corporation counsel to apply to the Legislature for an act authorizing the extension of Lexington avenue through to Ninety-Seventh street, and such an act was procured (chapter 885, Laws 1868; Laws 1869, p. 3). Thereafter, in pursuance of the authority conferred upon the city authorities by that act, Lexington avenue was opened in a prolongation of its former line to the southerly side of Ninety-Seventh street, and it thereafter was worked, and is now and has been for many years one of the legal streets of the city of New York. The title of the plaintiffs' testator is derived by deeds from Walter, none of which deeds refer in any way to the said restriction, except as I shall mention hereafter. After Lexington avenue had become legally one of the streets of New York, and had been opened, one Clark, who was then the owner of all the property which Walter had owned on September 20, 1865, west of Lexington avenue as so opened (being lots 14, 15, 16, and so much of 17 as was not taken for the opening of Lexington avenue), laid out his said property in lots facing upon Lexington avenue instead of upon Seventieth street. The owners of the lots east of Lexington avenue, which had formerly belonged to Walter, did the same, and the property on both sides of Lexington avenue, south of the center line between Seventieth and Seventy-First streets, is now improved substantially with buildings facing on the avenue. The building erected at the northeast corner of Lexington avenue and Seventieth street has its southerly wall on the street line of Seventieth street. All the property which was covered by the restrictions contained in the agreement between Hinchman and Walter has been improved. The property which lies between the premises in question and the land 125 feet east of Fourth avenue is set back from the street substantially 10 feet, in accordance with the terms of the restriction. The plaintiffs claim that, as soon as Lexington avenue was laid out, the exception which I have noted in the restriction agreement between Walter and Hinch-

man became operative, and when the property included in lots 14, 15, 16, and so much of 17 as was not taken for the avenue was laid out into lots having a frontage upon Lexington avenue, instead of Seventieth street, they no longer were subjected to the restrictions. It seems to me fairly plain that this was the intention of Walter and Hinchman. The agreement says it is not to apply to lots on the corners of Seventieth street and any intersecting avenue. At the time of the agreement made, the property affected was not intersected by any avenue. The words must therefore have been used in contemplation of the probability that Lexington avenue or some similar avenue would be laid out between Third and Fourth avenues. Otherwise the words were meaningless. Again, there was no lot on the corner of Seventieth street affected by the restriction, unless it should be the lot on the corner of Fourth avenue. But the word "corners" is used, indicating that it must have been the intention to exempt more than one lot in the designation of lots on the "corners." I think, therefore, that the property in question is no longer subject to the restrictions contained in the agreement made between Walter and Hinchman.

Second. The second restrictive agreement, which the defendants contend still applies to the premises in question, was contained in a deed dated September 20, 1865, and made by Mr. Walter to Mr. Clark. This deed contained a covenant on the part of Clark with Walter, his executors and administrators, "that all buildings which may at any time hereafter be erected upon the lots above described or any of them, shall be set back at least 10 feet from the northerly side of 70th Street, and that such space of 10 feet shall be kept and used forever hereafter as a courtyard." This covenant to run with the land, and to bind all future owners thereof. The property conveyed by the deed which contained this covenant consisted of two lots, 25 feet wide each; being lots Nos. 16 and 17 upon the map of common lands. It will be noticed that it was made before Lexington avenue had been opened. At the time Walter made this conveyance, he had conveyed Nos. 14 and 15 by an instrument which made no reference to any restriction whatever, and he was still the owner of lots 18, 19, 20, 21, and 22, and no other property which had been affected by the agreement between him and Hinchman. After the execution of this instrument, Walter or his executrix conveyed all his remaining lots, viz., 18, 19, 20, 21, and 22, to the same Clark, who was the grantee who had made the covenant with respect to lots 16 and 17. Now it seems to me that the intention of Walter in inserting the restrictions in the conveyance of lots 16 and 17 was not to impose a new restriction, but to comply with the covenant contained in his agreement with Hinchman, that, in any grant which he would subsequently make of the premises affected by that agreement, such a covenant would be inserted. I think, therefore, that it was not the intention of Walter to reserve to himself the right to enforce this covenant for his own benefit, but merely to subject this lot to the original restriction agreement between him and Hinchman, and that this agreement is to be construed as I have construed the former agreement; that is, that it does not apply to any land which subsequently came to be embraced in lots facing upon an avenue. Moreover, when Walter conveyed to Clark all his remaining property, the covenant contained in the deed to Clark, so far as it constituted an equitable easement upon the property affected by it, became extinguished, because Clark became the owner of the only property which could be said to be the dominant estate. After Walter had conveyed the balance of his land to Clark, the right to enforce the covenant made by Clark against Clark's grantees in respect to lots 16 and 17, either at law or in equity, was gone. Clark, in the deed conveying the premises in question, with others, to the plaintiffs' testator, sold the property subject to the restrictions contained in the agreement between Hinchman and Walter, if they should apply, and also to convenants contained in his deed from Walter. I do not think that this gave the restrictions any greater force or effect than that which I have concluded they possessed prior to that deed. The object of Clark was manifestly to exempt himself from the liability under the covenants of warranty contained in his deed. At the time he made this deed he owned no other property in the block, and in the deeds which he had given of the properties which he had purchased from Walter there were no restrictions whatever.

**94 N.Y.S.—65**

For these reasons, it appearing that there are no other objections to the title than those which I have discussed, I think that the title tendered to the defendants by the plaintiffs, as admitted in the answer and on the record before me, is a good and marketable one, and that the plaintiffs are entitled to a judgment for specific performance, but, under the stipulation made upon the minutes, without costs. The form of the judgment may be settled before me, or agreed upon by the parties.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

C. L. Atterbury, for appellants.

A. E. Blackmar, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

### FRENCH v. FRENCH et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

MORTGAGE FORECLOSURE—DEFICIENCY—JUDGMENT—TIME OF LIEN.

Under Code Civ. Proc. § 1627, providing that the final judgment in an action to foreclose a mortgage may award payment by a person liable for the debt secured of the debt remaining unsatisfied after a sale of the mortgaged property, and the application of the proceeds; section 1246, providing as one of the essentials in docketing a judgment the entry of "the sum recovered or directed to be paid, in figures;" and section 1250, providing that a judgment till docketed shall not affect real estate—a judgment for deficiency is not a lien on real estate till the report fixing the amount of the deficiency is filed.

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Oneida County.

Action for partition by Benjamin R. French against Elizabeth French and others. From part of the judgment directing a distribution of the proceeds of the sale in partition, defendants George C. Helfert and another appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

H. C. Sholes, for appellants.

John D. Collins, for respondents.

SPRING, J. The action is partition. On October 2, 1902, and prior thereto, one James G. French owned an undivided one-ninth of the premises in suit, and on that day conveyed them to the respondents, and the deed was recorded on the following day. A judgment of foreclosure and sale upon other lands of French was entered August 7, 1902, and the judgment adjudged that the "sheriff specify the amount of such deficiency in his report of sale, and that the plaintiffs have execution therefor, and that the defendant James G. French pay the same to plaintiff." The sale pursuant to the judgment occurred September 4, 1902, and the report of sale, which showed a deficiency of $851.03, for which French was liable, was confirmed October 4th, and the order of confirmation was entered in the clerk's office October 6th—two days after the record of